**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CRYPTOPEAK SECURITY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MGM RESORTS INTERNATIONAL, <br><br> Defendant. | C. A. No. 1:17-cv-745-LPS-CJB |

**DEFENDANT'S REPLY IN SUPPORT OF RULE 12(b)(6) MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Avenue, 17th Floor
P. O. Box 1114
Wilmington, DE 19899-1114
(302) 652-5070 - Telephone
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Michael R. Ellis
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 - Telephone
mcnabnay@fr.com
conrad@fr.com
rbonilla@fr.com
ellis@fr.com

**ATTORNEYS FOR DEFENDANT
MGM RESORTS INTERNATIONAL**

Dated: October 3, 2017

## **TABLE OF CONTENTS**

**Page**

I.  THE '150 PATENT IS DIRECTED TO AN ABSTRACT IDEA AND CONTAINS NO INVENTIVE CONCEPT ......................................................................................1

   A.  The automation of a preexisting authentication process is an abstract idea that is not unique to cryptography ....................................................1

   B.  The focus of the claims is not on improving technological capabilities ..................2

   C.  The '150 Patent claims nothing transforming the underlying abstract idea into patentable subject matter ..........................................................................4

   D.  The claims of the '150 Patent do not transform the abstract idea through any "ordered combination" .........................................................................5

II.  DEFENDANT'S MOTION SHOULD BE RESOLVED NOW BECAUSE CLAIM CONSTRUCTION IS NOT NECESSARY ...........................................................7

III.  CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ............................................................................................. 4, 5, 6, 7

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ..................................................................................... 5, 6

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) ......................................................................................... 4

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ..................................................................................... 2, 3

*Intellectual Ventures I LLC v. AT & T Mobility LLC*,
   235 F. Supp. 3d 577 (D. Del. 2016) ................................................................................. 7

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
   2015 WL 1941331 (S.D.N.Y. April 28, 2015) ............................................................. 6, 7

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ......................................................................................... 4

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
   No. 1:16–1055–GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017) ................................... 7

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   66 F. Supp. 3d 829 (E.D. Tex. 2014) ............................................................................... 4

*Pragmatus Telecom, LLC v. Genesys Telecommc'ns Labs.*,
   114 F. Supp. 3d 192 (D. Del. 2015) ................................................................................. 9

*In re TLI Communications LLC Patent Litigation.*,
   823 F.3d 607 (Fed. Cir. 2016) ................................................................................. 2, 5, 7

*UbiComm, LLC v. Zappos IP, Inc.*,
   No. 13-1029-RGA, 2013 WL 6019203 (D. Del. Nov. 13, 2013) ..................................... 8

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ........................................................................................... 9

*United States v. One Toshiba Color Television*,
   213 F.3d 147 (3d Cir. 2000) ............................................................................................ 10

**Statutes**

35 U.S.C. § 101 ................................................................................................................. *passim*

Plaintiff's opposition fails to clarify what, if anything, the '150 Patent claims beyond the abstract idea of determining the legitimacy of a sender or recipient of a coded message before undertaking decoding. The '150 Patent is directed toward this abstract idea and claims automating the escrow and certification steps in conventional public key cryptosystems ("PKC") in use at the time. Previously characterized as the "secret handshake," the method claimed in the '150 Patent only decribes the implementation in generic terms and offers no transformative step that would render its subject matter patentable.

## I. THE '150 PATENT IS DIRECTED TO AN ABSTRACT IDEA AND CONTAINS NO INVENTIVE CONCEPT

Fundamentally, the "inventive concept" behind the '150 Patent is nothing more than the automation of existing processes, using known mathematical algorithms, described at a high level of generality. The '150 Patent is entitled "Auto-Escrowable and Auto-Certifiable Cryptosystems." As its title suggests, the '150 Patent claims the automation of the escrow and certification steps in conventional PKCs. Plaintiff acknowledges that the practical effect of automating these steps is to eliminate "trusted third parties" ("TTP") from the cryptographic process. (*See* D.I. 19 at 12-13.) As a result, any of the attendant "benefits" of the "invention" flow from the elimination of those third parties rather than from any inventive aspect of the claims themselves.

### A. The automation of a preexisting authentication process is an abstract idea that is not unique to cryptography

Plaintiff argues that the '150 Patent's "claims bring together numerous unconventional elements and steps to solve *specific* problems related to security within computer network transmissions." (*Id.* at 10 (emphasis added)). These purported problems are the litany of alleged inefficiencies and drawbacks associated with the inclusion of remote TTPs in the cryptographic process. (*Id*. at 12-13). However, upon closer inspection, none of these supposed security problems are unique to cryptography or somehow limited to the cryptographic environment; they are merely

the inefficiencies of involving additional parties in virtually any process, tailored to the field of cryptography. *See In re TLI Communications LLC Patent Litigation.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (limiting an abstract idea to a particular environment "does not make the claims any less abstract.")

The solution to these "problems" is to automate the TTPs' escrow and certification steps and negate the need to involve them at all. The '150 Patent's specification unambiguously embraces this understanding: "In the present invention, the user constructs a key pair such that the private key is provably escrowed automatically. Hence, no trusted third parties are needed whatsoever." (D.I. 1, Ex. 1 at 2:2-5.) According to Plaintiff, Claim 1 achieves this goal: "the key generated by the method [in claim 1 is] "auto-recoverable" and "auto-certifiable." "Because the verification can be performed by anyone, there is no need for a TTP." (D.I. 19 at 14 (internal citation omitted.))

And yet, elsewhere, Plaintiff goes to great lengths to distinguish the present case from *FairWarning* and *LendingTree* on the grounds that the "'150 patent does not automate a traditional activity, or merely implement an old practice in a new environment" despite the fact that both the '150 Patent specification and Plaintiff's opposition explicitly acknowledge doing exactly that. (*Id*. at 12). In short, Plaintiff avails itself of the specification language where it is helpful in concealing the abstractness of the concept in play, often reading the language directly into the scope of the claims. But it distances itself from the same specification language to the extent that it exposes the patent ineligibility of the '150 Patent's claims.

**B.     The focus of the claims is not on improving technological capabilities**

Plaintiff's attempt to analogize the '150 Patent to the patent at issue in *Enfish* is unavailing because, ultimately, the '150 Patent is not concerned with the inner workings of or any particular improvement to the encryption process. Rather, the '150 Patent is concerned with improving the

2

efficiency of existing cryptographic processes by eliminating TTPs, which it envisions accomplishing by automating their functionality. *Enfish* identified the relevant inquiry as "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). The focus of the '150 Patent's claims is unequivocally on the latter: they are directed to the abstract idea of automating the escrow and certification steps undertaken by TTPs and merely invoke computer components to practice the claimed process.

A review of Claim 1 reinforces the lack of any specific improvements or implementation in the '150 Patent:

> A method and apparatus for generating public keys and a proof that the keys were generated by a specific algorithm comprising the steps of:
> the user's system generating a random string of bits based on system parameters;
> the user running a key generation algorithm to get a secret key and public key using the random string and public parameters;
> the user constructing a proof being a string of bits whose public availability does not compromise the secret key and wherein said constructing of said proof requires access to said secret key, but at the same time said proof provides confidence to at least one of a plurality of other entities that said public key was generated properly by the specified algorithm, and wherein said confidence is gained without having access to any portion of said secret key.

The claim language requires generating a random string of bits, using a key generation algorithm to generate keys, and then "constructing a proof" that will allow the recipient of the coded message to verify the authenticity of the sender before decoding, but the claim does not describe how the proof is constructed or any parameters of the proof. By only claiming the desired result without articulating any specific roadmap for arriving at that result, the claims of the '150 Patent fall short of claiming eligible subject matter under § 101 and risk preempting all cryptographic

3

authentication methods. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *see also Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014). Indeed, one need only look at the disparate industries represented by defendants in conjunction with plaintiff's own acknowledgement of the '150 Patent's preemptive scope to appreciate the concern. (D.I. 19 at 18) ("[T]he '150 patent improved this technological realm [of cryptographic authentication] to such an extent that subsequently there was widespread use.")

Regardless of the purported limitations, the claims do not recite an improvement to how the components are interconnected, how they are used, or how they are coded to perform some unconventional or inventive function. If they did, the § 101 inquiry might be a closer question. Instead, they simply claim the idea itself and add some "apply it with a computer" language. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 at 2358 (2014).

### C. The '150 Patent claims nothing transforming the underlying abstract idea into patentable subject matter

Although Plaintiff asserts that the '150 Patent "claims bring together numerous unconventional elements and steps," neither Plaintiff's opposition nor the claims of the '150 Patent specify which elements or steps are unconventional, or introduce anything beyond "simply instruct[ing] the practitioner to implement the abstract idea." (D.I. 19 at 10); *Alice* at 2359. Instead, Plaintiff continually refocuses the attention on the benefits touted in the specification rather than on the claims, which is misplaced in the context of an eligibility analysis. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims.").

Even in the specification, however, the '150 Patent "fails to provide any technical details for the tangible components" and "instead predominantly describes the methods in purely

functional terms" using nothing more than conventional computer technologies (D.I. 1, Ex. 1 at 5:60-62; 11:61-64), employing any one of multiple known cryptographic algorithms (*Id*. at 6:41-42), and running on non-specified hardware configurations or software routines (*Id*. at 4:18-27). *See In re TLI* at 612. The '150 Patent recites nothing more than generic, inconsequential elements recited merely to perform basic computer functions that do not limit the patent in any meaningful way. *See Alice* at 2360, ("As a result, none of the hardware recited by the system claims offers a meaningful limitation beyond generally linking the use of the method to a particular technological environment, that is, implementation via computers.") (internal quotation omitted).

## D. The claims of the '150 Patent do not transform the abstract idea through any "ordered combination"

Plaintiff leans heavily on *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1248 (Fed. Cir. 2014) and on the fact that the '150 Patent is directed to cryptographic methods, implying such technology enjoys a special zone of patentability privilege. (D.I. 19 at 15-18.) However, Plaintiff's reliance on *DDR Holdings* and the inherent patent eligibility of cryptographic technologies is misplaced.

The *DDR Holdings* court cautioned against overextending its analysis, stating that "not all claims purporting to address Internet-centric challenges are eligible for patent." *DDR Holdings*, 773 F.3d at 1258. The patent at issue in *DDR Holdings* was specific to website traffic, which is an issue unique to networked computers. Here, the problems the '150 Patent purports to solve are problems of inefficient and insecure message authentication. Of course, message authentication problems occur on computers, but unlike the patent at issue in *DDR Holdings*, authentication problems are not "unique to computers." (*Id*. at 1258). Indeed, the need for authenticating messages extends well beyond and long predates the world of computers.

Similarly, all three of the patents invalidated in *Intellectual Ventures II* were patents purporting to solve security problems in the field of computing. There, in distinguishing *DDR Holdings*, the district court recognized that broad claims covering security, filtering, and encryption did not survive *Alice* scrutiny merely because they purported to solve security problems in the field of computing. *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, 2015 WL 1941331, *11, 13, and 16 (S.D.N.Y. April 28, 2015) (invalidating three patents under §101 in view of the *DDR* decision).

First, the *Intellectual Ventures II* court invalidated the '694 patent under § 101 because it "specifies neither how the information in the packets is processed nor how an access rule is selected or implemented; just that the information is processed and the access rule is implemented" (with original emphasis)). (*Id*. at *11). Similarly, the '150 Patent does not specify how its claimed proof is constructed or processed, just that it is.

Second, the *Intellectual Ventures II* court invalidated the '409 patent under § 101, which is a patent drawn to the idea of using rules to manage access to unencrypted portions of data after primary distribution. (*Id*. at *13). In doing so, the court reasoned that '409 patent "seeks to monopolize every concrete application of post-distribution access to intellectual property and validating such a patent would tend to impede innovation rather than promote it, thereby thwarting the primary object of the patent laws." *Id*. (internal quotations omitted). Here, the '150 Patent seeks to monopolize any authentication method of providing a recipient with confidence that a received message is from an authentic sender.

Third and finally, the *Intellectual Ventures II* court invalidated the '084 patent by ruling that insulating an abstract idea by using technological features such as adjusting a firewall of a device or analyzing data packets, is "insufficient to transform the abstract idea into a patent-eligible

application." (*Id*. at *16). Likewise, the '150 Patent's purported limitation to cryptosystems is insufficient to transform the abstract idea into a patent-eligible application.

Thus, the claims at issue in the '150 Patent are subject to the same methodical eligibility analysis as any other patent in any other field of use. Because nothing in either the claims or the specification discloses any "technical improvement over prior art," Plaintiff's "ordered combination" of elements argument fairs no better than the individual limitations. *See Intellectual Ventures I LLC v. AT & T Mobility LLC*, 235 F. Supp. 3d 577 at 591 (D. Del. 2016) (stating, "considering the limitations in combination add[s] nothing . . . that is not already present when the [limitations] are considered separately'") (citation omitted). The claims' generic arrangement of computer components and conventional processes merely automates the escrow and certification processes in existing cryptographic systems, which "cannot confer patent eligibility." *In re TLI* at 615; *see also Jedi Techs., Inc. v. Spark Networks, Inc*., No. 1:16–1055–GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017) ("given the generic configurations and conventional functionality disclosed, the asserted claims fail to impart any 'specific or limiting recitation of . . . improved computer technology' that satisfy step two of *Alice*.")

## II. DEFENDANT'S MOTION SHOULD BE RESOLVED NOW BECAUSE CLAIM CONSTRUCTION IS NOT NECESSARY

The Court need not wait until after claim construction to resolve defendant's motion. (*See* D.I. 19 at 6-9.) Thus far, Plaintiff has identified several claim terms for construction and advanced proposed constructions for those terms. Even accepting as true Plaintiff's constructions for

purposes of this motion only,[1] none of the proposed constructions transforms the '150 Patent claims into patentable subject matter:

| Claim 1 Term | Plaintiff's Construction | Abstraction |
|---|---|---|
| generating public keys and a proof that the keys were generated | Creating cryptographic public keys and a proof that the secret key that corresponds to said public keys is in the possession of the creator. | Restates in other language that the public key is mathematically related to the secret key. |
| generating a random string of bits | Utilizing the unique parameters of the system at that moment to create a string of numbers that is sufficiently random to prevent the value from being guessed or calculable by visible parameters. | Reiterates a generic method of random number generation. |
| running a key generation algorithm to get a secret key and public key | Utilizing software specially coded using an appropriate cipher suite to create a matching pair of cryptographic keys: secret key that is kept private and a public key that is made public. | Restates standard cryptographic processes in more verbose language. |
| the user constructing a proof being a string of bits | Utilizing a string of data whose original value is known to another party that is then encrypted using the secret key | Reiterates a generic method of mathematical encryption. |
| said proof provides confidence to at least one of a plurality of other entities that said public key was generated properly by the specified algorithm | Said string of data whose value is known and encrypted using the secret key can then be decrypted utilizing the public key. | Restates the concept of authenticating an encrypted message without exposing the contents of the message; i.e., the "secret handshake." |
| Claim 3 Term | Plaintiff's Construction | Abstraction |
| publishing public keys and a proof that the keys were generated | Creating and sending cryptographic public keys and a proof that the secret key that corresponds to said public keys is in the possession of the creator. | Restates in other language that the public key is mathematically related to the secret key. |
| user's system reading the system parameters | Utilizing the unique parameters of the system at that moment to, for example, create a string of numbers that is sufficiently random to prevent the value | Reiterates a generic method of random number generation. |

---

[1] Where deemed necessary, this Court has resolved § 101 motions by "simply adopt[ing] the Plaintiff's claim constructions for the purpose of this Motion and find[ing] that this construction would be the construction most favorable to the Plaintiff." *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029-RGA, 2013 WL 6019203, at *3 n.2. (D. Del. Nov. 13, 2013).

8

| | from being guessed or calculable by visible parameters | |
|---|---|---|
| running a key generation algorithm to get a private key and public key | Utilizing software specially coded using an appropriate cipher suite to create a matching pair of cryptographic keys: secret key that is kept private and a public key that is made public. | Restates standard cryptographic processes in more verbose language. |
| the user's system constructing a proof that the private key was generated properly | Utilizing a string of data whose original value is known to another party that is then encrypted using the private key. Said encrypted string can then be decrypted utilizing the public key. | Reiterates a generic method of mathematical decryption. |
| where said constructing of said proof requires access to said private key and verification of said proof can be performed by any other entity with no access to any portion of said private key | Utilizing a string of data whose original value is known to another party that is then encrypted using the private key. | Restates the concept of authenticating an encrypted message without exposing the contents of the message; i.e., the "secret handshake.". |

As shown above, none of the proposed constructions render the claims any less abstract or the claimed implementation any more inventive. For example, despite the invocation of dense technical terminology, Plaintiff's proposed construction of "generating a random string of bits" (i.e., "Utilizing the unique parameters of the system at that moment to create a string of numbers that is sufficiently random to prevent the value from being guessed or calculable by visible parameters") confirms that there is nothing unconventional or inventive about that element that did not already exist in the prior art. (*See, e.g.*, D.I. 1, Ex. 1 at 3:30-36 ("the present invention employs the general technique of non-interactive zero-knowledge proofs. . . A heuristic for how to construct such proofs was shown in. . . 1987.)

Instead, Plaintiff merely incorporates "generic technological elements," like "software specially coded" and "unique parameters of the system," that "do not transform the abstract idea into something more. *See Pragmatus Telecom, LLC v. Genesys Telecommc'ns Labs.,* 114 F. Supp. 3d 192, 201 (D. Del. 2015). Claim construction is thus unnecessary. *See Ultramercial, Inc. v. Hulu,*

9

*LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) ("No formal claim construction was required because the asserted claims disclosed no more than 'an abstract idea garnished with accessories' and there was no 'reasonable construction that would bring [them] within patentable subject matter.'") (citation omitted).

Finally, Plaintiff's repeated appeals to another district court's Report and Recommendation on validity in an unrelated round of litigation involving entirely different defendants is of no moment. *See generally* 18 James W. Moore et al., *Moore's Federal Practice* ¶ 134.02[1][d] (3d ed. 2011) (HN6 "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") *(citing, e.g., United States v. One Toshiba Color Television,* 213 F.3d 147, 152 (3d Cir. 2000)). That court denied those defendants' motions because it found that "the § 101 analysis in this case critically depends on the scope of the asserted claims and the construction of certain key terms." (D.I. 1, Ex. 2 at 13.) Terms like "constructing a proof" and "provides confidence" confounded the court and led it to determine that claim construction was necessary. In this round of litigation, however, Plaintiff has proposed claim constructions that, even if accepted as true for the purposes of this motion, expose the abstractness of '150 Patent because they fail to limit the claims to any particular implementation or specific improvement to computer technology. The claims simply use computer technology and well-known cryptographic processes (e.g., ***any mathematical algorithm or string of data***) to practice the abstract idea, and this they cannot do. Accordingly, this Court can and should grant this motion and dismiss Plaintiff's claims.

### III.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's complaint in its entirety because the asserted '150 Patent claims are invalid under § 101 for lack of patent-eligible subject matter.

|  |  |
|---|---|
| Dated:  October 3, 2017 | FISH & RICHARDSON P.C.<br><br>By: */s/ Jeremy D. Anderson*<br>Jeremy D. Anderson (#4515)<br>222 Delaware Avenue, 17th Floor<br>P. O. Box 1114<br>Wilmington, DE  19899-1114<br>(302) 652-5070 - Telephone<br>janderson@fr.com<br><br>Neil J. McNabnay<br>David B. Conrad<br>Ricardo J. Bonilla<br>Michael R. Ellis<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>(214) 747-5070 - Telephone<br>mcnabnay@fr.com<br>conrad@fr.com<br>rbonilla@fr.com<br>ellis@fr.com<br><br>**ATTORNEYS FOR DEFENDANT<br>MGM RESORTS INTERNATIONAL** |